[Civ. No. 9969. Second Appellate District, Division One.—June 2, 1936.]

A. T. LAWRENCE, as Administrator, etc., Appellant, v. E. F. DUCOMMUN, Respondent.

Arthur F. Larrabee, Lee Baylor Stanton and Nixon A. Lange for Appellant.

Reay, Scharf & Reay and Oliver O. Clark for Respondent.

ROTH, J., *pro tem.*—Appellant is the administrator of the estate of George A. V. Smith, deceased. Appellant was substituted in this action as plaintiff, the case having been originally filed by Smith, who died thereafter. For purposes of convenience, however, plaintiff and appellant will be sometimes referred to as Smith. As a result of a contract executed on May 29, 1931, Smith obtained from the defendant, in addition to other consideration, four several promissory notes of $12,500 each, in return for the exclusive rights in the United States (except the state of Oregon) to an invention of a particular type of turntable which was covered by certain letters patent.

There were a number of transactions between Smith, one A. T. Lawrence, and defendant, prior to the execution of said contract. The facts pertaining to each, while pertinent to the instant inquiry, are so extended and ramified in nature that it would require several pages of concise *résumé* to set them forth with any sort of clarity. It is sufficient to say that Smith and Lawrence, aided and abetted by Reverend A. B. Gardner, a psychic divine, known as "Mother Gardner", who conducted and operated "The Church of the Open Door of Truth", and who held herself out as being able to give business and financial advice obtained from "divine" psychic sources, practiced with success a series of impositions upon defendant to their mutual profit, although the lion's share went to Smith. With the constant help of Lawrence and the continuous "divine" assistance of "Mother Gardner", Smith managed to administer the final *coup de grace* to defendant in the form of the contract referred to. Before the blow was dealt, however, there were a variety of representations made, all of which the evidence in a superabundance reveals to have been without a basis in fact. Some of these representations were as follows:

(1) That this turntable was perfected excepting for a few minor improvements.

(2) That Smith had spent $40,000 in perfecting this device.

(3) That Smith had five *bona fide* orders for this turntable.

(4) That Lawrence had paid Smith $10,000 for a one-half interest in the Los Angeles County rights to this turntable device.

(5) That this device could be manufactured and sold at a profit of $200 to $300 per table.

(6) That there was a great demand for said product.

Since the notes were not paid, Smith brought the present action, which was tried before a jury, the jury finding for the defendant. To Smith's complaint, in four counts (one for each note), defendant pleaded several defenses, including fraud, rescission and failure of consideration. No damages were pleaded in the fraud defense, and this, as well as a number of other defects, is called to our attention as a reason for reversing the judgment entered upon the verdict of the jury. ■ The facts, however, are ample support for the implied finding of the jury that there was fraud, a failure of consideration, and that a rescission ought to be had. The answer does not properly plead a failure of consideration, but there are sufficient facts pleaded upon which to predicate such an affirmative plea. Evidence was introduced at the trial on this issue, and it was treated as an issue in the case. Under such circumstances, even though there is an entire absence of an essential allegation, the point may not be raised for the first time on appeal. (2 Cal. Jur. 246, 247, 254; *King* v. *Davis,* 34 Cal. 100; 2 New Cal. Dig. 166, "Appeal and Error", sec. 135; *Daly* v. *Cruse,* 108 Cal. App. 713 [292 Pac. 166].) ■ Appellant asserts, further, that the jury did not have any right to consider the issue of rescission because no notice of rescission had been served prior to the bringing of the action. It should be mentioned, further, that with reference to the issue of rescission, no question of laches was raised in the trial court and none is raised in appellant's brief. In any event, there is no evidence that defendant had notice of any of the facts for a sufficient length of time prior to his answer to support a finding of laches.

■ Generally speaking, a notice of rescission must be served before an action to declare that a rescission has in fact taken place can be brought. (Civ. Code, sec. 1691.) There are, however, several well-settled exceptions to this rule. Some of the exceptions are: (1) where the plaintiff is entitled to retain that which he has received; (2) where the rights of the defendant can be fully protected by the decree, or where an

accounting is necessary to determine the relative rights of the parties; (3) where, without any fault of the plaintiff, peculiar complications have arisen which make it impossible for plaintiff to offer full restoration. (*California Farm & Fruit Co.* v. *Schiappa-Pietra,* 151 Cal. 732 [91 Pac. 593]; *Kelley* v. *Owens,* 120 Cal. 502 [47 Pac. 369, 52 Pac. 797]; *Zeller* v. *Milligan,* 71 Cal. App. 617 [236 Pac. 349]; Black on Rescission and Cancellation, 2d ed., p. 1402.) In *Kelley* v. *Owens, supra,* at page 510, the court says:

"There are exceptional cases where restoration or an offer to restore before suit brought is not necessary—as, for instance, where the thing received by the plaintiff is of no value whatever to either of the parties; or where the plaintiff has merely received the individual promissory note of the defendant; or where the contract is absolutely void; or where it clearly appears that the defendant could not possibly have been injuriously affected by a failure to restore; or where, without any fault of plaintiff, there have been peculiar complications which make it impossible for plaintiff to offer full restoration, although the circumstances are such that a court of chancery may by a final decree fully adjust the equities between the parties— . . . "

In *Zeller* v. *Milligan, supra,* the court, at page 627, says:

"The instant action was commenced on the day following the discovery by plaintiff of the alleged fraud which had been practiced upon her by the defendants. The law abhors idle acts. A formal notice of rescission on the same day on which the suit was instituted would have given the defendants no information differing either in nature or extent from that contained in the allegations of the complaint; nor were defendants' rights in the premises in any manner changed or prejudiced by reason of the plaintiff's failure to give such notice."

■ According to the allegations of defendant's answer, which were borne out by the evidence, he "only shortly prior to the commencement of (the) action learned that said representations were false and untrue"; and in his answer defendant alleges: "That the defendant has received nothing from plaintiff except some alleged assignments of patent applications and these he now offers to cause to be reassigned to plaintiff upon plaintiff paying to him the sums of money paid by him to plaintiff and the cancellation of said notes

which were executed by defendant to plaintiff, and further offers to do equity." This offer was repeated by defendant in open court, upon the conclusion of the evidence and before the case went to the jury.

Defendant did not initiate the instant proceedings. His answer affirmatively shows an offer to restore. He might have served a notice of rescission and then filed his answer, or properly a cross-complaint. The case of *Zeller* v. *Milligan*, (*supra*) is direct authority to the effect that the service of a notice under such circumstances would have been an idle act. Furthermore, there is no doubt that the court "by a final decree (could) fully adjust the equities between the parties". We therefore conclude that the jury was well within its rights in finding that a rescission should be adjudicated. ▮ A question was raised in the trial court that in view of the equitable nature of the defense defendant was not entitled to a jury trial, and a motion was made to dismiss the jury. Defending the motion, defendant agreed to dismiss "from the action our claim for cancellation". The motion was denied. Defendant's agreement was not equivalent to a dismissal of his right to a rescission in the event the fraud pleaded and proved showed that defendant was entitled to one. In any event, the trial court, sitting as a court of equity, had the discretion to retain the jury in an advisory capacity. Even though the verdict of the jury, because of the equitable issue, be considered an advisory one, it is clear that it was satisfactory to the trial judge, who, not only accepted it and caused judgment to be entered thereon, but in addition denied a motion made by appellant for a new trial.

▮ Our attention has been directed to certain instructions requested by appellant and refused by the trial court, and to others which are alleged to have been erroneously given. We have examined and scrutinized the instructions called to our attention, as well as the charge as a whole, and we are satisfied that no prejudicial error has been committed. (Art. VI, sec. 4½, Const.; *Clarke* v. *McClurg*, 215 Cal. 279, 285 [9 Pac. (2d) 505, 81 A. L. R. 908]; *Anderson* v. *Southern Pac. Co.*, 129 Cal. App. 206 [18 Pac. (2d) 703]; *Halberstadt* v. *Nielson*, 113 Cal. App. 313 [298 Pac. 37].)

The judgment is affirmed.

York, Acting P. J., and Doran, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 31, 1936.